IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | | No. 18 CR 157 |
| ) | | Judge John Z. Lee |
| DEON PUGH, ) | | |
|     Defendant. ) | | |

### DEON PUGH'S MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY, NEW TRIAL

Now Comes Defendant, DEON PUGH, by his attorneys QUINN A. MICHAELIS and JOSHUA B. ADAMS, pursuant to Federal Rules of Criminal Procedure 29 and 33, and respectfully moves this Honorable Court to enter an order granting a judgment of acquittal, or alternatively for a new trial. In support thereof, Mr. Pugh states as follows.

I. **INTRODUCTION**

Mr. Pugh was charged, along with others, with conspiracy to distribute over one kilogram of heroin, two counts of distribution of a controlled substance, and one count of being a felon in possession of a firearm. Mr. Pugh's trial was conducted before this Court from February 28, 2022 to March 4, 2022. The government' presented testimony from investigating agents and officers, expert witnesses, and cooperating co-defendant Derick Wiltz. At the close of the government's case, Mr. Pugh orally moved this Court for a judgment of acquittal pursuant to Federal Rule of Evidence 29(a), arguing that the government failed to meet its burden with

1

respect to the threshold quantity of controlled substances required to impose a mandatory minimum term of imprisonment for the conspiracy count. That motion was taken under advisement until the Court issued its verdict.

On March 9, 2022, this Court returned a verdict of guilty on all counts of the indictment, and a finding that the charged conspiracy involved the distribution of over 1,000 grams of heroin. This Court then granted an extension of time for the filing of post-trial motions to May 11, 2022. Mr. Pugh now renews his judgment of acquittal pursuant to Rule 29 because the evidence at trial was insufficient to sustain a special verdict that the charged conspiracy involved more than 1,000 grams of heroin. Alternatively, Mr. Pugh respectfully requests a new trial. With regard to the arguments presented, Mr. Pugh incorporated herein, all arguments made in open court, at sidebar, and that were the subject of any motions or memoranda filed in this case.

II. ARGUMENT

Rule 29 of the Federal Rules of Criminal Procedure instructs courts, that upon a defendant's motion, they "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29; see also *United States v. Mohamed*, 759 F.3d 978, 803 (7th Cir. 2014). Entry of a judgment of acquittal is appropriate when, considering the evidence in the light most favorable to the government, no fact finder "could have found the existence of each element of the crime beyond a reasonable doubt." *United States v. Kitchen*, 57 F.3d 516, 529 (7th Cir. 1995); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979);

*United States v. Peters*, 277 F.3d 963, 967 (7th Cir. 2002); *United States v. Rivera*, 273 F.3d 751, 755 (7th Cir. 2001). Judgment of acquittal must, therefore, be entered where the government failed to prove even one element of the crime charged beyond a reasonable doubt. *Kitchen*, 57 F.3d at 523 (reversing conviction where government failed to prove element of crime).

Further, the fact finder's decision may not be based on impermissible inferences and mere speculation. *Mohamed*, 759 F.3d at 810; see also *United States v. Sanchez*, 615 F.3d 836, 845 (7th Cir. 2010) (jury verdict overturned where jury verdict rested solely on the "piling of inferences upon inferences."). There must be a distinguished line between reasonable inferences and speculation; the government's case cannot be based on "conjecture camouflaged as evidence." *Piaskowski v. Bett*, 256 F.3d 687, 693 (7th Cir. 2001). When "the record is devoid of evidence pointing to guilt," or "evidence on a key element" is "so tenuous that a conviction would be shocking," a judgment of acquittal is required. *United States v. Meadows*, 91 F.3d 851, 855 (7th Cir. 1996) (internal quotations omitted).

The Court based its findings as to the amount of heroin distributed by the conspiracy on the following information:

- Wiltz participated in two transactions in September 2017, and October 2017 in which he distributed a total of 215 grams of heroin.
- On November 18, 2017, Mr. Pugh and Mason conspired to distribute 50 grams of heroin.

3

- On November 20, 2017, Mr. Pugh and Mason conspired to distribute 50 grams of heroin.
- On November 29, 2017, Mr. Pugh and Mason conspired to distribute 50 grams of heroin.
- On February 7, 2018, the conspiracy distributed 25 grams of heroin.
- On February 7, 2018, Mr. Pugh stated that he had 1000 grams of heroin.
- On February 9, 2018, the conspiracy distributed 100 grams of heroin.
- On February 14, 2018, Mr. Pugh and Mason conspired to distribute 50 grams of heroin.
- On February 15, 2018, a customer returned 15 grams of heroin that had previously been distributed.
- On February 23, 2018, Mr. Pugh and another co-conspirator discussed 10.4 grams of heroin.
- On February 28, 2018, Mr. Pugh and Mason conspired to distribute 100 grams of heroin.
- On March 7, 2018, Mr. Pugh and other co-conspirators discussed 250 grams of heroin.
- The searches of the houses occupied by co-conspirators added an additional 321.2 grams of heroin

In total, the Court found that the conspiracy involved at least 2,236.6 grams of heroin.

## Wiltz's transactions from September and October 2017 equaling 215 grams of heroin.

Proof of a drug conspiracy under 21 U.S.C. § 846 requires "substantial evidence that the defendant knew of the illegal objective of the conspiracy and agreed to participate." *United States v. Longstreet,* 567 F.3d 911, 918-19 (7th Cir. 2009). For instance, "[a] conspiracy may be shown by evidence which shows that the co-conspirators embraced the criminal objective of the conspiracy, that the conspiracy continued towards its common goal, and that there were co-operative relationships." *United States v. Gilmer*, 534 F.3d 696, 703 (7th Cir. 2008). Each conspirator may be liable for "acts of every other conspirator done in furtherance of the conspiracy.'" *United States v. Gironda*, 758 F.2d 1201, 1211 (7th Cir. 1985). However, a conspirator may not be held responsible for the acts of his co-conspirators if those acts "could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *Pinkerton v. United States*, 328 U.S. 640, 1184 (1946).

Here, although the Court found that the conspiracy began in September 2017, and therefore Mr. Pugh is responsible for the heroin Wiltz admitted to distributing in September and October 2017. However, in trying to determine the scope of Wiltz' knowledge of Mr. Pugh's dealings with Mason, the following exchange occurred:

> Q: …at some point between February and the end of August into September, you had met Deon Pugh?

A: I did not know him like that. I mean, I—I—knew of him. But we had no dealings with each other. And when he started coming around Chip house, that's how it happened.

Q: Okay. So at what point did he start coming around Chip's house?

A: In end of '17. (Tr. 393).

Later, on cross examination, in response to questions about the information Wiltz provided to the FBI about other people coming to Mason's house during the time that he was an informant, between September and October of 2017, the following exchange occurred:

Q: You were told by the FBI to get information about people in Chip's house, right?

A: Yeah.

Q: Okay, and, then, you did that; is that right?

A: Yeah.

Q: And then you would go back to your FBI –the person that you were talking to and you would give them that information, is that right?

A: Yeah.

Q: And, then, while you were doing that, you never once told the agent about Deon Pugh correct?

A: I told them what they wanted to hear, what they wanted—everything the wanted to know, and what they wanted –asked me to do. That's what I told them.

The Court: Mr. Wiltz, that's not the question though. Go ahead and ask him the question again, please.

Q: You never told the agents that you were working for about Deon Pugh.

A: No.

(Tr. 475-76).

Here, although Wiltz admitted to the distribution of two separate quantities in September and October of 2017, the government presented no evidence that these two distributions were foreseeable to Mr. Pugh. Despite Wiltz's unequivocal testimony that he met Mr. Pugh at the end of 2017, the government elicited testimony that Mr. Pugh came to Mason's house every day beginning August of 2017. He further admitted that he was instructed to get information about people coming to Mason's house during September and October of 2017, but never provided information to the FBI that Mr. Pugh was one of those people coming to Mason's house during that time period. There was no corroborating evidence presented that Mr. Pugh did, in fact begin coming to Mason's house every day during that time period, or that he would have had the knowledge to be able to foresee these transactions Wiltz admitted to from September and October of 2017. There was no testimony that Mr. Pugh had any knowledge of Mason's activities outside of what Mr. Pugh did with Mason, or that he had knowledge of Mason's activities in September or October of 2017.

Further, The government's evidence showing Mr. Pugh going to Mason's house does not support that he would go there every day. The government had pole camera footage of Mason's house every day from at least November 2017 through March 2018. Yet the government presented evidence that Mr. Pugh went to Mason's house only on 9 occasions during that 5-month period of time. None of these occasions were on consecutive days. Further, despite obtaining the ability to

7

overhear Mason's phone conversations in November of 2017, the only calls presented between Mason and Mr. Pugh were from the end of November, 2017. The government presented no evidence to corroborate Wiltz' confused testimony, that Mr. Pugh was coming to the house every day beginning September of 2017—despite having access to the pole camera outside of Mason's house, physical surveillance of the activities at Mason's house, and recorded phone calls from Mason's phone. The 215 grams of heroin Wiltz admitted to distributing should not be included in the amount of heroin attributable to Mr. Pugh.

February 7th phone call about 1000g of Heroin.

    The Court erred in finding that Mr. Pugh was actually talking about having received 1000 grams of heroin prior to the date of this phone call. The Court's finding was based in part on the fact that the proposition that this statement was exaggeration was "not supported by any evidence, either in the texts, in that particular phone call or any other phone call." (Tr. 742). However, the contrary proposition, that Mr. Pugh had actually received 1000 grams of heroin before February 7, 2018, is similarly not supported by any evidence, either in the texts, in that particular phone call, or any other phone call.

    Prior to February 7, 2018, the government presented evidence that Mr. Pugh went to Mason's house to retrieve 50 grams of heroin on three separate occasions. These were occasions that occurred not one day after another, but were separated by a number of days—the longest of which was 9 days. Further, the most Mr. Pugh

discussed purchasing from Mason was 50 grams at a time. Despite having access to the pole camera outside of Mason's home during December 2017 and January 2018, the government presented no evidence of Mr. Pugh's activities at Mason's house during this time period, and there were no phone calls or text messages from this time period either. Further, the government presented no further phone calls between Mr. Pugh and Lucas Currie (the other individual in the phone call) to establish the nature of their relationship, or to support an inference that Mr. Pugh did not exaggerate to him or have reason to mislead Lucas Currie about the nature of his distribution activities. To credit Mr. Pugh's statement about 1000 grams of heroin as anything but bolstering or exaggeration is just speculation, and the special verdict on drug quantity cannot be based on impressible inferences or speculation. *Mohamed*, 759 F.3d at 810. This 1000 gram heroin amount should not be attributable to Mr. Pugh[1].

February 9th distribution of 100g of Heroin

The Court erred in finding that the conspiracy distributed 100g of heroin on February 9th, 2018. At most the amount distributed on this date was 50 grams. Here, the Court credited Wiltz' testimony that he recalled the amount distributed to a man in a Honda on that evening to be 100 grams. However, in Government's Exhibit 214, Mr. Pugh and Mason discussing someone in a Honda pulling up to the

---

[1] Even taking as true that this conversation involved an admission that Mr. Pugh and Mason received 250 grams of heroin at somepoint prior to this phone call, there is no independent evidence to suggest that this was a separate amount of heroin that was distributed and not what was eventually distributed in the calls that followed the February 7, 2018 phone call.

9

house and having Mason send someone out to give that person 50 grams of heroin. Government's Exhibit 252 continues the conversation between Mr. Pugh and Mason about this customer in a Honda, discussing the car getting stuck in the snow, and Wiltz is heard on this call receiving instructions to take this quantity of 50 grams to this person in the Honda, now waiting at a gas station on 63rd and Dan Ryan. Despite Mr. Wiltz's certainty that this transaction involved 100 grams of heroin, his testimony is clearly contradicted by the phone calls from that night that discuss the specific amount of heroin being only 50 grams. Importantly, this is the only transaction that Wiltz testified about that had independent corroboration through phone calls and pole camera footage, and that independent corroboration demonstrated that Wiltz's testimony was unreliable.

February 7th phone call about 1000g of Heroin.

The Court erred in finding that Mr. Pugh was actually talking about having received 1000 grams of heroin prior to the date of this phone call. The Court's finding was based in part on the fact that the proposition that this statement was exaggeration was "not supported by any evidence, either in the texts, in that particular phone call or any other phone call." (Tr. 742). However, the contrary proposition, that Mr. Pugh had actually received 1000 grams of heroin before February 7, 2018, is similarly not supported by any evidence, either in the texts, in that particular phone call, or any other phone call.

10

Prior to February 7, 2018, the government presented evidence that Mr. Pugh went to Mason's house to retrieve 50 grams of heroin on three separate occasions. These were occasions that occurred not one day after another, but were separated by a number of days—the longest of which was 9 days. Further, the most Mr. Pugh discussed purchasing from Mason was 50 grams at a time. Despite having access to the pole camera outside of Mason's home during December 2017 and January 2018, the government presented no evidence of Mr. Pugh's activities at Mason's house during this time period, and there were no phone calls or text messages from this time period either. Further, the government presented no further phone calls between Mr. Pugh and Lucas Currie (the other individual in the phone call) to establish the nature of their relationship, or to support an inference that Mr. Pugh did not exaggerate to him or have reason to mislead Lucas Currie about the nature of his distribution activities. To credit Mr. Pugh's statement about 1000 grams of heroin as anything but bolstering or exaggeration is just speculation, and the special verdict on drug quantity cannot be based on impressible inferences or speculation. *Mohamed*, 759 F.3d at 810. This 1000 gram heroin amount should not be attributable to Mr. Pugh.

February 28 distribution of 100g of Heroin

The Court found Mr. Pugh responsible of the distribution of 100 grams of heroin on February, 28 2018 based on a series of text messages between Mr. Pugh and another unidentified individual, which was entered into evidence as

Defendant's exhibit 7. In one of the first messages to Mr. Pugh, the unidentified individual states ""I need 100 bro n link ok tonight or early n am." After this individual sends a second message stating "need link bad," Mr. Pugh responds "everyone will have it on Thursday." The individual then asks whether Mr. Pugh can "shoot west they want 20 cod." After a number of texts back and forth where Mr. Pugh and the unknown individual discuss trying to meet up, the conversation concludes with the unknown individual stating "we missed them next time ok."

There is no evidence to support the inference that "100 n link" is 100 grams of heroin, and not an amount to be placed on a link card, which will be replaced on the first day of the next month, Thursday, March 1, 2018. Further, even if this conversation was about distribution of heroin, at most, this particular transaction involved 20 grams of heroin ("they want 20 cod"), and this transaction ultimately never completed ("we missed them next time ok.") Mr. Pugh should not be held responsible for the distribution of 100 grams of heroin on February 28, 2018.

III. CONCLUSION

The evidence presented by the government at trial was insufficient to support the Court's finding that Mr. Pugh conspired with others to distribute over 1000 grams of heroin. Mr. Pugh he conspired to distribute a quantity of heroin below the 1000 grams threshold. For the foregoing reasons, Mr. Pugh respectfully requests this Honorable Court enter a judgment that Mr. Pugh did not conspire to distribute at least 100 grams of heroin, or in the alternative that he be granted a new trial.

Respectfully submitted,

s/ Quinn A. Michaelis
Quinn A. Michaelis
Counsel for Deon Pugh
73 W. Monroe, Suite 106
Chicago, IL 60603
(312) 714-6920

Joshua B. Adams
LAW OFFICES OF JOSHUA B. ADAMS, P.C.
900 W. Jackson Blvd., Suite 7E
Chicago, IL 60604
(312) 566-9173

## CERTIFICATE OF SERVICE

I, Quinn A. Michaelis, an attorney, certify that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

## DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY, NEW TRIAL

was served on May 11, 2022, to all parties of record via the CM/ECF system.

s/ Quinn A. Michaelis
Quinn A. Michaelis